EDITH EVELYN CLARK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 103989.   Promulgated October 9, 1942.

*Cornelius C. Moore, Esq.*, for the petitioner.
*Davis Haskin, Esq.*, for the respondent.

OPINION.

STERNHAGEN: The Commissioner determined a deficiency of $21,-230.25 in gift tax for 1932.   The facts are not in dispute.

Petitioner, now a resident of New York City, is the widow of James F. A. Clark.   She and her husband formerly resided at Newport, Rhode Island, and her tax return for 1932 was filed there.

On June 13, 1931, petitioner's husband transferred securities to a trustee by an instrument directing the trustee to collect the income, pay expenses, and distribute net income to petitioner for life; and upon her death to divide the principal into equal shares for the benefit of their three children, and to pay all or part of the income of a share to each child for life, and upon the child's death to distribute the share among the child's issue.   The trust was expressly made irrevocable by the grantor.

THIRD: The Grantor grants to the Wife the right from time to time, by written instrument executed with the formalities required by law in respect to a deed of real estate, and delivered to the Trustee, to revoke, terminate or amend this deed of trust and/or any provision thereof, to any extent and in any manner that the Wife may determine.

On June 22, 1932, petitioner amended the deed of trust by striking out this part of article third.   On that date the value of trust corpus was $754,012.84.   The Commissioner determined that by the amendment petitioner made a gift of the remainder interest in the trust, and computed a gift tax on a value of $338,815.67, the undisputed present worth of the trust corpus payable at the death of a person aged 47 years.   This was explained in the notice of deficiency, as follows:

Since the provisions of the deed of trust dated June 13, 1931, provided you with full power to revoke, terminate or amend the same, or any provisions thereof to any extent and in any manner that you shall determine, you were vested with complete control and disposition of the property and your relinquishing such right on June 22, 1932, constituted a gift within the meaning of the gift tax act of 1932.

The argument to support this view is that, since the petitioner had an unqualified power to amend the trust, even to the extent of directing that the property be transferred to her, she was in substance the owner of the property, and that when she amended the trust by relinquishing this power, she in effect transferred the property, subject to her continuing right to receive the income, to the successor beneficiaries named in the trust. The argument involves the idea that the relinquishment of the power is the same as its exercise. Whether the donee of the power should appoint to the successor beneficiaries or should expressly relinquish the power to appoint, the effect is to assure to the successor beneficiaries the acquisition of the property upon her death, and thus give them a present vested interest in lieu of the contingent expectancy they had under the original trust. The question is whether this change may be regarded as a transfer of property within the meaning of those words in the gift tax statute.

If this were a testamentary power of appointment, the petitioner's express relinquishment of it in her will would have the legal effect of a transfer of the property to the children from the donor of the power; and this would also be true, if, despite the exercise of the power by appointing them, they, nevertheless, chose to take by virtue of the original trust. Under such circumstances, their acquisition of the property at the death of the donee of the power would not be regarded as by transfer at her death to support an estate tax upon her estate. *Helvering* v. *Grinnell*, 294 U. S. 153 (disapproving *Wear* v. *Commissioner*, 65 Fed. (2d) 665, and *Lee* v. *Commissioner*, 57 Fed. (2d) 399); *Helvering* v. *Safe Deposit & Trust Co. of Baltimore*, 316 U. S. 56. See also *Legg's Estate* v. *Commissioner*, 114 Fed. (2d) 760. It seems equally true that her relinquishment during her life is not a transfer by her. It is a final and irrevocable extinguishment of the power, *Merrill* v. *Lynch*, 13 N. Y. Supp. (2d) 514. The property interests which the beneficiaries have after the relinquishment are already contingently theirs by virtue of the original trust, and the relinquishment removes a power of defeasance and gives them greater assurance of their future expectancy. To regard this as a present transfer of property is, we think, to distort the language of the statute too far to be acceptable. Cf. *Commissioner* v. *Solomon*, 124 Fed. (2d) 86.

Reviewed by the Board.

*Decision will be entered for the petitioner.*

---

TURNER, dissenting: In my opinion, the Board has confused the question here involved and decided another. The reasoning applied is that applicable to cases where the power or right involved is a general power of appointment. Here the interest in and right to the prop-

erty were much broader. Under a power of appointment the holder of the power not only has no interest of his own in the remainder estate nor any right whereby he may bring the corpus unto himself for his own unfettered use, consumption, or enjoyment, but merely has the power to designate for the donor a different donee. In the instant case petitioner not only had the power to amend the trust instrument so as to shift the remainder interest to parties other than those named by the grantor but had the further power to revoke the trust at any time she saw fit, to designate herself as the distributee and thereby bring the corpus of the trust to herself for her own unfettered use, enjoyment, and consumption and deprive anyone other than herself of any and all rights whatsoever in the property.

In *Richardson* v. *Commissioner*, 121 Fed. (2d) 1, under substantially similar facts, the question was whether the income of the trust was taxable to the holder of powers substantially similar to those held by the petitioner here, the said holder of the power not being the grantor. While recognizing that under the laws of Connecticut the power of revocation, which was never exercised, was not an asset of the holder's estate and gave him no interest in the corpus of the trust, the court stated the question there as being "whether an unfettered control over the corpus of a trust either in the grantor or in the donee of a power of revocation, who may appropriate it to his personal use, is not the equivalent of ownership of property for tax purposes." The court answered that question in the affirmative and affirmed the decision of the Board. It is true that the tax there dealt with was income tax and the section of the statute applicable was section 22 (a) of the Revenue Act of 1932, which is very broad in its scope, while the tax here dealt with is the gift tax, which was imposed by section 501 of that act. Section 501 is also very broad in scope, however, and applies to gifts, direct or indirect, and to property, tangible or intangible. It very obviously applies also to gifts of value even though of a character not subject to classification as property. Sec. 506, Revenue Act of 1932.

While it may be, and probably is, true that under real property law the petitioner's act of relinquishing her power to revoke and to take the corpus did not effect the vesting of remainders in the successor beneficiaries but the elimination or removal of the power or danger of defeasance, the powers, rights, and interests of the petitioner were in my opinion such as to make their relinquishment a taxable gift within the meaning of the above cited statute. Cf. *Richardson* v. *Commissioner*, *supra*. By the original grant the grantor parted with any and all rights in and to the property, whether legal or beneficial in character. After the grant those rights reposed somewhere and with someone. Legal title was in the trustee and the successor beneficiaries had what probably should be referred to as a remainder subject to divestment, but what has more practically been described by the majority

as a "contingent expectancy." All other rights—those of real substance—were for all practical purposes in the petitioner. Her rights, which included the right to take the corpus as her own and to consume it for her own purposes, were far greater than anything received and held by the so-called successor beneficiaries, and, regardless of any theories that may be evolved from real property law, her relinquishment of those powers and rights effected a passage or transfer of her rights and interests in the property from her to the successor beneficiaries. Such transfers are taxable gifts within the meaning of the statute. Cf. *Burnet* v. *Guggenheim*, 288 U. S. 280, and *Lehman* v. *Commissioner*, 109 Fed. (2d) 99.

We do not have here a case comparable to that of *A. P. Giannini*, 42 B. T. A. 546, for there the petitioner at all times refused to accept or take the compensation voted to him by the bank of which he was president. The same may not be said of Edith Evelyn Clark with respect to the interests in and rights to the property here involved. She accepted the grant of all such interests and rights and held them for more than a year before passing them by her own act to the holders of the "contingent expectancy." The rights considered in *Helvering* v. *Grinnell*, 294 U. S. 153, and *Merrill* v. *Lynch*, 13 N. Y. Supp. (2d) 514, were of an entirely different character.

SMITH, DISNEY and OPPER agree with this dissent.